DANIEL R. HEMMINGER, Indiv. and as Special Adm'r of the Estate of Tina M. Hemminger, Deceased, Plaintiff-Appellant, v. KATE NEHRING *et al.*, Defendants-Appellees (Jeffrey Lemay *et al.*, Defendants).

Third District No. 3—08—0751

Opinion filed April 8, 2010.

Harry C. Lee (argued), of Chicago, and Darlene D. Soderberg, of Soderberg & Associates, P.C., of Rockford, for appellant.

Richard J. Hickey (argued), of Hickey, Melia & Associates, Chtrd., of Chicago, for appellees.

JUSTICE SCHMIDT delivered the opinion of the court:

Plaintiff, Daniel R. Hemminger, individually, and as special administrator of the estate of his deceased wife, Tina Hemminger, asserted survival claims on behalf of the estate and wrongful death claims on behalf of himself and two minor children. Plaintiff alleged medical negligence in the interpretation or supervision of the interpretation of decedent's Pap smear slides.

Defendants Kate Nehring, CT (ASCP), and Stuart H. Myster, M.D., and their employer, CGH Medical Center Auxiliary, d/b/a CGH Medical Center, filed motions for summary judgment claiming: (1) immunity under the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/6—105, 6—106 (West 2004)); and (2) plaintiff's suit, including the wrongful death claims brought on behalf of the minors, was barred by decedent's failure to bring the action within one year of the date of the injury or when the cause of action accrued, as then required by section 8—101 of the Tort Immunity Act (745 ILCS 10/8—101 et seq. (West 2004)). Defendants Dr. Jeffrey Lemay and his employer, Sterling Rock Falls Clinic, Ltd., are not part of this appeal. The trial court granted the motions for summary judgment on both issues and found no reason to delay enforcement or appeal of its order pursuant to Supreme Court Rule 304(a). 155 Ill. 2d R. 304(a). Plaintiff appeals. We affirm.

## BACKGROUND

On June 22, 2000, Dr. Jeffrey Lemay performed a Pap smear on plaintiff's decedent, 34-year-old Tina Hemminger. On June 26, 2000, Kate Nehring, a licensed cytotechnician, found the slide to be within normal limits. One day later, Dr. Myster reviewed the slide and concurred that it was within normal limits. Hemminger experienced a number of significant medical problems from September through December of 2000, and visited a number of different physicians. On or about December 15, 2000, Hemminger was diagnosed with stage IIIb cervical cancer. Within a month, she hired an attorney and started gathering medical records. She hired a physician to review those records in early 2001. However, she failed to file a lawsuit by June of 2001 (one year after the Pap smear report was issued), and failed to file a lawsuit by December of 2001 (one year after the date of discovery asserted by the plaintiff). Mrs. Hemminger died on April 7, 2002.

In June of 2002, the plaintiff, Daniel Hemminger, filed the original action against only Dr. Lemay and Sterling Rock Falls Clinic, Ltd. In April of 2004, the plaintiff filed a first amended complaint adding defendants Kate Nehring, CT (ASCP), Stuart H. Myster, M.D., and their employer, CGH Medical Center Auxiliary, d/b/a CGH Medical

Center (hereinafter CGH Medical Center). On July 14, 2004, plaintiff voluntarily dismissed the action against all defendants.

On July 14, 2005, plaintiff refiled the action against all defendants. Counts I (Wrongful Death Act (740 ILCS 180/0.01 (West 2004))) and II (survival action (755 ILCS 5/27—6 (West 2004))) sought damages against Lemay and his employer, Sterling Rock Falls Clinic, Ltd. Plaintiff alleged that Lemay was negligent in failing to perform a cervical biopsy in June of 2000 and that, as a proximate result of that negligence, Mrs. Hemminger's cervical cancer progressed to stage IIIb with renal failure which, in turn, caused her death.

Counts III (Wrongful Death Act) and IV (survival action) sought recovery from defendant Kate Nehring and her employer, CGH Medical Center. Plaintiff alleged that on or about June 27, 2000, the defendant cytotechnologist, Kate Nehring, while acting in the scope of her employment with defendant CGH Medical Center, negligently failed to correctly interpret Tina Hemminger's Pap smear slides as showing obvious cervical cancer and/or negligently failed to seek the assistance of defendant Dr. Stuart Myster, and that as a proximate result of her negligence, Mrs. Hemminger's cancer progressed to stage IIIb with renal failure which caused her death.

Counts V (Wrongful Death Act) and VI (survival action), sought recovery from Dr. Myster and his employer, CGH Medical Center. Plaintiff alleged that on June 27, 2000, the defendant pathologist, Dr. Stuart Myster, while in the scope of his employment with CGH Medical Center, negligently failed to correctly interpret and/or supervise the interpretation of decedent's Pap smear slides; and defendants' negligence proximately caused decedent's death.

## Motion for Summary Judgment

After completion of the discovery of plaintiff's opinion witnesses, defendants Kate Nehring, Dr. Myster, and CGH Medical Center (defendants) moved for summary judgment, arguing that the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/1—101 et seq. (West 2004)) applied to any cause of action brought against them since CGH Medical Center is a municipal entity and plaintiff had acknowledged that both Kate Nehring and Dr. Myster were employees of CGH, acting within the scope of their employment at all relevant times. Defendants argued that summary judgment was appropriate because: (1) plaintiff's allegations of negligence involved a failure to make an adequate physical examination and/or a failure to make a diagnosis and were therefore immunized by sections 6—105 and 6—106 of the Tort Immunity Act (745 ILCS 10/6—105, 6—106 (West 2004)); and (2) any cause of action against them was

barred by the statute of limitations as set forth in section 8—101 of the Tort Immunity Act (745 ILCS 10/8—101 (West 2004)).

Plaintiff argued that the immunities provided in sections 6—105 and 6—106 of the Tort Immunity Act did not apply here because: (1) the complaint did not allege that defendants failed to make an adequate physical examination; and (2) the complaint did not allege that they failed to diagnose cancer. Rather, plaintiff asserts the complaint alleged that defendants misinterpreted or failed to supervise the interpretations of the Pap smear and that Pap smears are screening devices and are not intended to diagnose cancer.

In response to the statute of limitations defense, plaintiff argued that because both Ashley Hemminger and Jessica Hemminger were minors on or about June 27, 2000 (when defendant allegedly misinterpreted Hemminger's Pap smear), the cause of action brought on their behalf was timely filed in April of 2004 (when the first amended complaint was filed). According to plaintiff, pursuant to section 13—212(b) of the Code of Civil Procedure (735 ILCS 5/13—212(b) (West 2004)), the minors had until June 27, 2008, to file the action. Alternatively, if the Tort Immunity Act were applicable, plaintiff argued Ashley had until November 13, 2005, and Jessica had until August 9, 2007, to file a complaint.

The trial court heard arguments on defendants' motion for summary judgment at two separate hearings. At the conclusion of the first hearing, the trial court found, based on its reading of the Tort Immunity Act and case law interpreting the Act, that the provisions of the Act applied to plaintiff's action against defendants.

Plaintiff orally sought leave to file an amended complaint alleging willful and wanton misconduct pursuant to section 3—108 of the Tort Immunity Act (745 ILCS 10/3—108 (West 2004)). Defendants objected, and the trial court directed the parties to brief the issue. With respect to the statute of limitations issue, the court withheld ruling on the interplay between that statute and the statute of repose to allow further briefing on the issue by the parties.

After the parties had filed their supplemental briefs on the statute of limitations and willful and wanton issues, the trial court heard additional arguments on both issues. On April 21, 2008, the court entered an order granting summary judgment on counts III, IV, V, and VI, on both the statute of limitations and immunity issues, making its order final and appealable pursuant to Supreme Court Rule 304(a). 155 Ill. 2d R. 304(a). Plaintiff filed a timely motion for reconsideration raising only the statute of limitations issue, which the trial court heard and denied. This appeal followed.

## ANALYSIS

### I. Jurisdiction

■ Defendants contest this court's jurisdiction to hear this appeal. Specifically, defendants argue that plaintiff's failure to address the immunity issue in the motion to reconsider, coupled with plaintiff's failure to file a notice of appeal within 30 days of the order granting summary judgment, renders that order final and unappealable on that issue. We disagree.

The trial court granted summary judgment as to fewer than all the parties and, therefore, the order was not appealable without a finding pursuant to Supreme Court Rule 304(a). 155 Ill. 2d R. 304(a). Defendants requested that the court find no just reason to delay enforcement or appeal of the order pursuant to Rule 304(a); the trial court granted that request. Rule 304(a) states that the time for filing a notice of appeal shall be as provided in Supreme Court Rule 303. 155 Ill. 2d R. 303. Rule 303(a)(1) states that a notice of appeal must be filed within 30 days after the entry of the final judgment. 155 Ill. 2d R. 303(a)(1).

Under Rule 303(a)(2), a motion for reconsideration tolls the time for appeal until the order disposing of the motion is entered. 155 Ill. 2d R. 303(a)(2). Plaintiff filed a timely motion to reconsider the order granting summary judgment, referring only to the statute of limitations issue and without referring to the immunity issue. Defendants argue that the motion to reconsider tolled the time for appeal on the statute of limitations issue only; the notice of appeal on the immunity issue was untimely.

The failure to timely file a notice of appeal deprives an appellate court of jurisdiction. *Lowenthal v. McDonald*, 367 Ill. App. 3d 919, 856 N.E.2d 1118 (2006). Here, the single order granting the motion for summary judgment on both issues says, *"This ruling* is final and appealable pursuant to Supreme Court Rule 304(a)." (Emphasis added.) The Rule 304(a) language is unambiguous. Defense counsel drafted the order that he argues is really two separate orders. Defense counsel cannot argue that it means something other than what it says. Plaintiff filed a single motion to reconsider a single order granting summary judgment. This tolled the time for filing a notice of appeal with respect to the order. Keep in mind that, without the above Rule 304(a) language, the order granting summary judgment as to fewer than all defendants would be interlocutory and, therefore, unappealable at this time. Had the court entered summary judgment on each issue separately, each with its own Rule 304(a) finding, or had this been a final and appealable judgment with no defendants remaining,

we would have a different case. We conclude that this court has jurisdiction to hear plaintiff's appeal.

## II. Immunity

■ Plaintiff first argues that section 6—105 of the Tort Immunity Act does not apply to the facts before us. 745 ILCS 10/6—105 (West 2004). Specifically, plaintiff contends that the Act provides immunity for the failure to make a physical or mental examination or an adequate physical or mental examination for the purposes of determining whether there is a disease or illness. Plaintiff argues that this is not what he pled. Rather, the complaint alleged that defendants failed to "correctly interpret or supervise the interpretation of Pap Smear slides."

Based on the testimony of two expert witnesses and defendant Nehring, plaintiff argues that an "incorrect interpretation" is not the same as an "inadequate examination" under section 6—105 of the Act. In other words, plaintiff argues that a laboratory examination of a slide is not an examination under section 6—105 of the Act.

Moreover, plaintiff asserts that section 6—106 of the Act, which immunizes public employees for injuries resulting from the failure to diagnose an illness, does not apply to the facts before us either. Plaintiff asserts that a Pap smear does not "diagnose" cancer, it merely screens for it.

There is no dispute on appeal that CGH is a local government entity or that defendants were acting within the scope of their employment with CGH Medical Center. Therefore, we are left only with an issue of statutory interpretation in regard to the Tort Immunity Act. Questions involving the construction of statutes are questions of law reviewable *de novo. Abruzzo v. City of Park Ridge*, 231 Ill. 2d 324, 332, 898 N.E.2d 631, 636 (2008).

The legislature decided as a matter of public policy that the government would be more efficient if certain immunities and rights were granted to local government agencies, including the protection of public employees from liability. *Zimmerman v. Village of Skokie*, 183 Ill. 2d 30, 697 N.E.2d 699 (1998). In providing this immunity, the General Assembly sought to prevent the dissipation of public funds on damage awards in tort cases. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 368, 799 N.E.2d 273, 278-79 (2003).

The supreme court has instructed, "It is well established that the primary objective of this court when construing the meaning of a statute is to ascertain and give effect to the legislature's intent." *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 503-04, 732 N.E.2d 528, 535 (2000). In *Michigan Avenue*, plaintiff's

decedent visited the defendant hospital numerous times complaining of a lump and sometimes pain in her left breast. The defendant doctors told her she had fibrocystic breast disease and did not perform any tests to determine whether it was cancer and did not treat her condition. Plaintiff argued, among other things, that defendant doctor should have taken steps that would have led to a diagnosis and that the "misdiagnosis" of fibrocystic breast disease arrived at through the negligence of defendants constituted the proximate cause of the patient's death. Defendants argued that plaintiff was actually alleging a failure to diagnose and, therefore, defendants were immune under sections 6—105 and 6—106 of the Tort Immunity Act. 745 ILCS 10/ 6—105, 6—106 (West 1992). The trial court agreed and granted defendants' motion for summary judgment. The appellate court affirmed, and the supreme court allowed plaintiff's petition for leave to appeal. The supreme court held that where a plaintiff essentially alleges that a public entity fails to diagnose an illness, it is immune under section 6—106(a) of the Tort Immunity Act. *Michigan Avenue*, 191 Ill. 2d at 514. Moreover, the supreme court stated that plaintiff's attempts to characterize its lawsuit as a case of "misdiagnosis" does not remove its action from the ambit of subsection (a) of section 6—106. *Michigan Avenue*, 191 Ill. 2d at 514.

The supreme court explained that the word "diagnosis" is not ambiguous and, thus, must be given its plain an ordinary meaning. *Michigan Avenue*, 191 Ill. 2d at 510. The court looked at several sources for the definition of a "diagnosis." Webster's dictionary defines "diagnosis" as the "art or act of identifying a disease from its signs and symptoms," and as an "investigation or analysis of the cause or nature of a condition, situation, or problem." Webster's Third New International Dictionary 622 (1993). The Sloan-Dorland Annotated Medical-Legal Dictionary defines "diagnosis" as "the art of distinguishing one disease from another" and as the "determination of the nature of a case of disease." Sloan Dorland Annotated Medical-Legal Dictionary 199 (1987).

A very similar issue was addressed in both *Wilkerson v. County of Cook*, 379 Ill. App. 3d 838, 884 N.E.2d 808 (2008), and *Willis v. Khatkhate*, 373 Ill. App. 3d 495, 869 N.E.2d 222 (2007). In *Wilkerson*, the administrator of the estate of a patient who died from cervical cancer brought a medical malpractice action against a county hospital and two of its employees, a cytotechnician and a pathologist, alleging that defendants were negligent in the treatment of the patient following an abnormal Pap smear. The circuit court granted defendants' motion for summary judgment pursuant to the Tort Immunity Act; the appellate court affirmed.

According to the plaintiff in *Wilkerson*, the failure to conduct a follow-up Pap smear, and potentially a cervical biopsy, constituted "negligent treatment" from which liability may arise under the Tort Immunity Act. Plaintiff argued that defendants' negligence related to their treatment rather than the diagnosis of the patient. The appellate court disagreed, finding that the alleged negligence in the case was not based on the treatment the patient received, but on the treatment that she should have received had defendants correctly examined and diagnosed all of her medical conditions. *Wilkerson*, 379 Ill. App. 3d at 847.

In *Willis*, the decedent's mother, individually and as independent administrator of decedent's estate, filed a medical malpractice complaint against decedent's physicians, nurse, and the hospital for wrongful death based on their failure to accurately diagnose and treat decedent's Hodgkin's lymphoma. The circuit court granted defendants' motions for summary judgment; the appellate court affirmed.

On appeal, plaintiff argued that the allegations in her complaint established that Dr. Muthswamy made a differential diagnosis of decedent's Hodgkin's lymphoma and then he failed to properly treat the differential diagnosis of Hodgkin's lymphoma. A differential diagnosis that is not chosen and/or treated as the ultimate diagnosis is a misdiagnosis by definition. *Willis*, 373 Ill. App. 3d at 505. Moreover, plaintiff alleged that Dr. Sansi, who performed a gallium scan, failed to communicate to Dr. Muthswamy the results of the screening test. In other words, plaintiff contended that this established a negligent treatment scenario, which is not immunized under section 6—106 of the Tort Immunity Act. *Willis*, 373 Ill. App. 3d at 504; 745 ILCS 10/6—106(b), (c), (d) (West 1998).

After reviewing plaintiff's complaint and supporting evidence, the appellate court explained that the negligence in the case was not based on the treatment the decedent received and the diagnosis the doctor should have made. The court stated that, "The gravamen of plaintiff's suit is a failure to properly diagnose decedent with Hodgkin's lymphoma." *Willis*, 373 Ill. App. 3d at 505-06, citing *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 512, 732 N.E.2d 528 (2000). Therefore, the court found that both Dr. Muthswamy and Dr. Sansi were immune under section 6—106(a) of the Tort Immunity Act. 745 ILCS 10/6—106(a) (West 1998).

Just as in *Michigan Avenue, Wilkerson* and *Willis*, the essence of plaintiff's action is that defendants failed to adequately examine and/or diagnose cervical cancer. Defendants were examining cells of the patient for the purpose of determining whether she had a disease or physical condition that would constitute a hazard to her health. This

is a screening test that is clearly part of the diagnostic process and precisely the conduct that both sections 6—105 and 6—106 immunize. See 745 ILCS 10/6—105, 6—106 (West 2004). Accordingly, we find that the trial court did not err in granting summary judgment.

### III. Statute of Limitations

Our decision on the immunity issue renders the statute of limitations issue moot.

### CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Whiteside County is affirmed.

Affirmed.

CARTER and O'BRIEN, JJ., concur.